UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GUILLORY,<br><br>    Plaintiff,<br><br> v.<br><br>BACKGRID USA, INC., et al.,<br><br>    Defendants. | Case No. 2:22-cv-06185-FLA-RAOx<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL [DKT. 26] AND ORDERING DEFENDANT AND ITS COUNSEL TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED** |

## RULING

Before the court is Defendant Backgrid USA, Inc.'s ("Backgrid") Motion to Disqualify ("Motion") Craig Sanders and the law firm Sanders Law Group ("Sanders") from representing Plaintiff Robert Guillory ("Plantiff") in this action. Dkt. 26-1 ("Mot.").[1]  Plaintiff opposes the Motion. Dkt. 34 ("Opp."). On June 23, 2023, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for June 30, 2023. Dkt. 39; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court DENIES the Motion and permits Plaintiff's counsel to continue in his representation of Plaintiff. The court further ORDERS Defendant and its counsel to show cause within fourteen (14) days why sanctions should not be imposed.

## BACKGROUND

On February 2, 2023, Plaintiff filed the Complaint in this action asserting various copyright infringement claims against Defendants Backgrid and The Grosby Group. Dkt. 1 ("Compl."). As the facts giving rise to the action are not directly implicated by the instant Motion, the court briefly summarizes the nature of the action and focuses on facts pertaining to Backgrid's Motion.

Plaintiff is a professional real estate photographer who licenses his images to online and print publications. Compl. ¶ 15. Defendant licenses and sells images to third parties for public and commercial use, including to celebrity gossip outlets. *Id.* at ¶ 19. Plaintiff captured twenty-one photographs of a property in Hidden Hills, California, and thereafter registered them with the United States Copyright Office. *Id.* at ¶¶ 24-25. He commenced this action upon learning the photographs were being used by media outlets, including HollywoodLife.com, and after receiving

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers listed natively.

confirmation from HollywoodLife.com that it had obtained a license for the images from Backgrid. *Id.* at ¶ 27.

Relevant to this motion, Defendant seeks to disqualify Sanders based on his prior representation of a separate and now-defunct entity, FlameFlyNet ("FFN"), which was owned by two individuals who are currently principals of Backgrid. Mot. at 13. FFN ceased doing business in 2016 or 2017.[2] Opp. at 11. As the parties present conflicting narratives about the events giving rise to the instant Motion, the court, having read and reviewed the pleadings and supporting evidence attached thereto, summarizes the facts as follows.

In or about 2013, Sanders was retained as counsel by PPS, a third-party entity ("PPS"), through which Sanders was introduced to another company, FFN. Opp. at 10. At the time, PPS worked with FFN to identify various infringements of FFN's images and enforced FFN's copyrights against infringers. *Id.* Thereafter, FFN retained Sanders to prosecute the claims identified by PPS. *Id.* at 11. Sanders' attorney-client relationship with FFN ceased in 2016 or 2017 when FFN went out of business; however, Sanders' attorney-client relationship with PPS continued. *Id.*

Around the same time FFN went out of business, PPS developed a new business model, which provided that it would purchase the exclusive rights to images from photo agencies and pursue any infringement cases it developed. *Id.* The model also contemplated PPS would be the plaintiff in any such actions and would be represented by Sanders. *Id.* A PPS executive then reached out to two Backgrid principals, who had also been owners of FFN, to arrange a meeting to discuss a potential business relationship based on this model. *Id.*

///

---

[2] A search of the California Secretary of State's business registration website states FFN's status as "inactive" since no later than December 28, 2021.

3

Backgrid and PPS subsequently engaged in two telephone conferences on July 24, 2017, and August 2, 2017. *Id.* Present on the calls for PPS were three company executives and Sanders, as company counsel. *Id.* Backgrid's representatives included the two principals who had owned FFN, and most notably, Backgrid's counsel, Joanna Ardalan, who represents Backgrid in the instant action. *Id.* PPS pitched its proposal to acquire the rights to Backgrid's photographic library and pursue infringement actions in its own name during the two conferences, but Sanders alleges "at no time was it contemplated that Mr. Sanders would be retained by Backgrid nor would Mr. Sanders at any time have been Backgrid's attorney." *Id.* At 12. Sanders alleges that is precisely why Ardalan participated on the calls as counsel for Backgrid. *Id.*

In its Motion, Backgrid claims it met with Sanders in July 2017 to discuss "legal issues relating to copyright infringement enforcement and the business structure of Backgrid" and that Sanders obtained privileged and sensitive information from Backgrid's principals, including information about "strategy for enforcement and protection of copyrighted materials, relationships with photographers, and its process for registering its copyrights." Mot. at 13.

## DISCUSSION

### I.  Legal Standard

Federal courts in California apply California state law in determining matters of attorney conflicts of interest and disqualification. *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("[W]e apply state law in determining matters of disqualification"); *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012) ("The Ninth Circuit ... has made clear that a federal court in California must apply California law in a disqualification motion").

A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Cal. Code Civ. Proc. §

128(a)(5); *see also Ontiveros v. Constable*, 245 Cal. App. 4th 686, 694 (2016) (quoting *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1145 (1999)) (quoting same).

"Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." *People ex rel. Dep't of Corps.*, 20 Cal. 4th at 1145. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id.* "[B]ecause motions to disqualify are often tactically motivated, such motions are strongly disfavored and subject to 'particular judicial scrutiny.'" *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1166 (C.D. Cal. 2014) (citing *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

California Rule of Professional Conduct 1.9 ("Rule 1.9") states in relevant part:[3]

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.*
>
> * * *
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm* has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 acquired by virtue of the representation of the former client to the disadvantage of the former client except as these rules or the State Bar Act would permit with respect to a current client, or when the information has become generally known;* or

---

[3] Terms marked with an asterisk are defined in California Rule of Professional Conduct 1.0.1.

5

    (2) reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 acquired by virtue of the representation of the former client except as these rules or the State Bar Act permit with respect to a current client.

## II.  Analysis

The court addresses Backgrid's arguments in turn and finds: (i) no attorney-client relationship existed between Sanders and Backgrid; and (ii) Sanders' attorney-client relationship with FFN does not inure to the benefit of Backgrid.  Having found Sanders did not have an attorney-client relationship with Backgrid or any of its affiliates, the court need not address the issue of whether the two matters are substantially related.

### A.  Prior Relationship with Backgrid

Defendant first argues Sanders had an attorney-client relationship with Backgrid, through which he obtained privileged and confidential information about "its copyright enforcement efforts against parties who infringe upon Backgrid's works," and its "business structure, [enforcement strategy], relationship with photographers, and its process for registering copyrights." Mot. At 18.

Though it is well-established a fiduciary duty and privilege attaches even where a prospective client does not formally retain an attorney, *see People ex rel. Dept. of Corporations*, 20 Cal. 4th at 1148; *Beery v. State Bar*, 43 Cal. 3d 802, 811 (1987), it is clear Backgrid could not have had any reasonable belief it was providing confidential information to Sanders for the purposes of legal advice or future retention.  On the two occasions where Backgrid claims to have transmitted confidential business information to Sanders, not only was Backgrid aware that Sanders was acting as counsel to PPS, an unrelated third-party, it was also represented by its own independent, privately retained counsel during arms-length negotiations with PPS concerning a possible business relationship.  *See* Dkt. 34 ("Kantif Decl."), Ex. A.  It is, therefore, not plausible, or credible, for Backgrid to have believed its

communications with Sanders were subject to an existing or prospective attorney-client relationship. This is especially so given that Backgrid's counsel, during the meetings with PPS and Sanders, is the same attorney representing it in this action and filing the instant Motion.

In support of its contentions, Backgrid offers a heavily redacted email, which it claims depicts a communication between Sanders and Backgrid "discuss[ing] legal issues relating to copyright infringement enforcement and the business structure of Backgrid." Mot. at 13. The court is unpersuaded by this evidence. As an initial matter, the email is sent from a PPS executive, who has not been shown to be an attorney, to Backgrid employees. Sanders is, at most, copied on the email. Backgrid's assertion that Sanders and Backgrid discussed legal issues during this email is at best inaccurate or, worse, misleading.

Further, Backgrid claims the email exchange reflects "advice about the statute of limitations, enforcement strategy, and contains highly sensitive information about [FFN's] infringers." Kantif Decl. ¶ 4. The court cannot determine the substance of the message as Backgrid has redacted the entire body of the e-mail except for the words "statute of limitations." *Id.* at Ex. B. Accordingly, the court is not persuaded that this email constitutes an attorney-client privileged communication or evidence of an attorney-client relationship between Backgrid and Sanders.

For the foregoing reasons, the court finds no attorney-client relationship existed between Sanders and Backgrid.

**B.      Sanders' Relationship with FFN**

Next, Backgrid argues Sanders' attorney-client relationship with FFN, whose two sole principals also serve as principals for Backgrid, disqualifies him from representing Plaintiff in this action. The court finds Sanders' prior representation of FFN to be irrelevant to his current representation of Plaintiff for two reasons.

First, FFN was not an affiliate of Backgrid at the time of Sanders' representation, and did not become an affiliate when Backgrid purchased FFN's assets

7

upon its dissolution. Backgrid does not argue FFN is an affiliate, but instead states "a majority of the [FFN library] is and has been licensed by and enforced by Backgrid starting in 2017." Kantif Decl. ¶ 2. The fact that Backgrid purchased FFN's assets upon the latter's dissolution in 2016 or 2017 does not make FFN an affiliate of Backgrid, nor does it confer upon Backgrid standing to assert the rights belonging to FFN, assuming FFN could even make a viable conflict of interest claim in this action.

Additionally, Backgrid's reliance on *All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.* is misplaced. In that case, an attorney was disqualified from representation after he acquired confidential information about a non-client pursuant to a joint defense agreement, and the attorney's law firm later merged with another law firm that was handling a case against the non-client. Case No. C 07-1200, 2008 WL 5484552 (N.D. Cal. Dec. 18, 2008). No such agreement existed between the parties here.

Second, Defendant claims Sanders should be disqualified because he is "well aware of [the two principals'] attitudes towards evaluation of willful copyright infringement claims, the prosecution of copyright infringement actions, negotiation of settlement, and who are willful infringers and what makes their conduct willful, all of which were disclosed" during Sanders' representation of FFN. Mot. at 19. Sanders, however, as counsel for FFN, represented the entity, not its principals. *See Wittenberg v. Bornstein*, 50 Cal. App. 5th 303, 310 (2020) (noting a co-owner of an entity is not the client of the attorney for the entity). California courts have held that though conflicts of interest are particularly problematic where the corporation is closely held, as is the case here, "where an adversarial setting presents itself, pitting the corporation against one or more of its officers, directors or shareholders, corporate counsel may still represent the corporation against those individuals, even though he or she may have received confidential information about them in the course of representing the corporation." *La Jolla Cove Motel & Hotel Apartments, Inc. v. Sup. Ct.*, 121 Cal. App. 4th 773, 784-85 (2004). Thus, Sanders' fiduciary duty was to FFN, not to its

principals. Sanders' familiarity with FFN's principals' "attitudes" towards various matters is insufficient to warrant disqualification.

### C.  Sanctions

Sanders asks this court to sanction Backgrid and its counsel, either under 28 U.S.C. § 1927 or through its inherent power, for filing the instant Motion in bad faith. Opp. at 20-22. According to Sanders, Backgrid's accusations were made recklessly given that both of its declarants and its counsel were fully aware Sanders acted as counsel for another company during the two telephone conferences between Backgrid and PPS. *Id.* at 21. The court finds Backgrid's allegations to be potentially misleading, and, therefore, ORDERS Backgrid and its counsel to show cause why sanctions should not be imposed.

### **CONCLUSION**

For the aforementioned reasons, the court DENIES the Motion. Backgrid and its counsel are ORDERED to show cause within fourteen (14) days why sanctions should not be imposed.

IT IS SO ORDERED.

Dated: September 27, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge